


MANAGING PARTNERS
**Phillip C. Hamilton, Esq.**
**Lance A. Clarke, Esq.**

May 29, 2022

The Honorable Judge D.P. Marshall, Jr.
600 West Capitol Avenue, Room B149
Little Rock, AR 72201

Via ECF

**Re: United States v. Brittany Dawn Jeffrey, 4:20-cr-288 (DPM) (JJV) – Modification of Order of Detention Requesting Conditions of Release Pending Sentence**

Dear Judge Marshall,

I write to respectfully request the release of Ms. Brittany D. Jeffrey pending sentence in this matter, over the Government's objection.

As Your Honor is aware, on May 18, 2022, Ms. Jeffrey pleaded guilty and accepted responsibility for her offense conduct at the 12th Street Police Station in the early morning hours of August 26, 2020. Specifically, she pleaded guilty, in a Superseding Information, to 18 U.S.C. Section 371, for conspiring to possess an unregistered firearm – a destructive device commonly known as a Molotov cocktail – in violation of 26 U.S.C. Section 5845(a).

In consideration of her guilty plea, the Government dismissed all counts contained within the Superseding Indictment filed on February 3, 2021 (Docket No. 56), which charged Ms. Jeffrey with violations of:

- 18 U.S.C. Section 844(n): Conspiracy to Maliciously Damage and Destroy Property by Means of Fire **(Count 1)**

- 18 U.S.C. Section 844(f)(l): Attempt to Maliciously Damage and Destroy a Vehicle by Means of Fire **(Count 2)**

- 18 U.S.C. Section 924(c)(1)(B): Possession of a Destructive Device in Furtherance of an Attempted Crime of Violence **(Count 3)**

- 26 U.S.C. Section 5861(d), 26 U.S.C. Section 5841, and 26 U.S.C. Section 5871: Possession of an Unregistered Destructive Device **(Count 4)**

- 26 U.S.C. Section 5861(f): Making of a Destructive Device **(Count 5)**

Where Ms. Jeffrey was originally facing a mandatory minimum sentence of thirty years in prison pursuant to 18.U.S.C. 924(c)(1)(B)(ii), and a mandatory minimum sentence of five years in prison pursuant to 18 U.S.C. 844(f)(I), pursuant to her guilty plea, she now faces no mandatory minimum prison sentence, and a statutory maximum of five years in prison.

Per Ms. Jeffrey's plea agreement which has been filed in the instant matter (Docket No. 203), the Government and Ms. Jeffrey agreed that under the United States Sentencing Guidelines, her base offense level shall be determined by U.S.S.G. § 2K2.1[1]. With a two-point enhancement considered for Ms. Jeffrey possessing a destructive device, and a two (to three)-point reduction for Ms. Jeffrey's acceptance of responsibility, Ms. Jeffrey's offense level will amount to either 17 or 18. In light of Ms. Jeffrey's criminal history, which is expected to fall in Category 1, Ms. Jeffrey is facing an advisory Guidelines sentence of 24 to 30 months, or 27 to 33 months in prison. Which, in either event, is a far cry from the mandatory minimum prison sentence of thirty years that she was facing pursuant to the Superseding Indictment.

Accordingly, it is per this material change in circumstances that the instant modification request is made.

As the Court is aware, Ms. Jeffrey's charges were originally presented to her in the Eastern District of Arkansas on December 17, 2020. On that date, the Government agreed to Ms. Jeffrey's release, and The Honorable Magistrate Judge Joe J. Volpe signed an Order Setting Conditions of Release (Docket No. 40). On June 21, 2021, a Petition for Summons for Person Under Pretrial Supervision/Motion to Revoke by the Government was filed with the Court (Docket No. 99) due to Ms. Jeffrey's urine specimens testing positive for marijuana on multiple occasions between December of 2020 and April of 2021 and Ms. Jeffrey's admissions that she had used marijuana to self-medicate past traumas.

On June 25, 2021, a hearing on the revocation motion was conducted before Judge Volpe. At the end of the hearing, Judge Volpe ordered Ms. Jeffrey detained. In an Order of Detention (Docket No. 105) dated the same day, Judge Volpe held Ms. Jeffrey "'unlikely to abide by any condition or combination of conditions of release' pursuant to 18 U.S.C. § 3148 (b)(1)(B) & (b)(2)(B) . . . based upon the evidence Defendant tested positive for marijuana on multiple occasions and attempted to tamper with the testing on at least two occasions by diluting samples." Judge Volpe went on to note that he had initially set the conditions prohibiting drug/marijuana use not "to be punitive; rather, the conditions were designed to provide necessary structure for Defendant to be in the best possible situation to defend herself against these very serious charges." Order of Detention (Docket No. 105, at pg. 2).

[1] Specifically, U.S.S.G. § 2k2.1(a)(5): "**18**, if the offense involved a firearm described in 26 U.S.C. § 5845(a);"

In response to Ms. Jeffrey's prior counsel filing for a modification of her conditions of release (Docket Nos. 98 and 103), which Judge Volpe ultimately denied as moot, he explained that:

> When these conditions of release were imposed, the defense did not object or request any form of accommodation concerning [Ms. Jeffrey's] use of medical marijuana. Instead, [Ms. Jeffrey] flouted this Court's conditions – which required, among other things, that she not violate federal law and not use or unlawfully possess a controlled substance – and attempted to deceive the Court by diluting samples. I note that Defendant tested positive less than two weeks after agreeing to follow these conditions. (Doc. No. 99.) It is an untenable position to ask, at this late stage, to modify her conditions of release - including the mandatory condition that Defendant not violate any federal law – in response to a petition to revoke her Order Setting Conditions of Release. Defendant essentially seeks relief from her numerous violations of the Court's Order Setting Conditions of Release by seeking to modify those conditions she refuses to follow. Her Motions to Modify Conditions of Release are too little, too late.
>
> It is also noteworthy that Ms. Jeffrey applied for and received her state issued medical marijuana card well after being placed on bond - on April 7, 2021. (Doc. No. 103.) Defendant applied for and received her card after being admonished that using marijuana, even for medical purposes, was a violation of the Court's Order Setting Conditions of Release.
>
> I further find Defendant's testimony unpersuasive regarding her posttraumatic stress disorder being the driving force for her need for marijuana. During her initial interview with U.S. Pretrial Services Officers in December 2020, Ms. Jeffrey reported no history of mental health issues and no need for mental health treatment. Ms. Jeffrey was also completely unwilling to work with her pretrial services officers to obtain mental health treatment stating she was leery of "government" provided services. Ms. Jeffrey's first reported treatment was last week – suggesting her need for treatment is a ploy to keep her from being revoked.

Order of Detention (Docket No. 105, at pgs. 2-3).

Upon detention, Ms. Jeffrey was transferred to the Greene County Jail in Paragould, AR, more than two hours away from her family, which includes her eleven-year-old daughter Brione. Ms. Jeffrey remained in Greene County Jail until April 19, 2022, when the U.S. Marshals, upon

request from the Government, at the undersigned's request, transferred Ms. Jeffrey to the Pulaski County Jail.

In making this application, it is paramount that the undersigned explain to the Court in no uncertain terms the horror, depression, and regrets about ALL of her decision-making leading up to her detention that Ms. Jeffrey has experienced throughout the pendency of her detention. According to the U.S. Census Bureau, Greene County, a rural county in Northeastern Arkansas, is less than 2% Black or African-American. The jail population in many respects corroborated that percentage during Ms. Jeffrey's incarceration. While ethnically, culturally and racially a minority within the jail, Ms. Jeffrey had the added misfortune of experiencing numerous occasions of overt racial hostility, including being called the N-word and other derogatory remarks on multiple occasions by other inmates, with little to no recourse from jail officials when she would make complaints about said conduct. Moreover, her requested vegetarian diet often consisted of foul smelling, barely cooked beans, which often times left Ms. Jeffrey unable to eat. During that time, she had limited contact with her prior counsel, did not fully understand what was going on with her case, and starting to lose hope that she would ever be able to find a way out of the situation.

She missed her family, including her mother (Christine), her sister (Ashley), and most importantly her daughter (Brione) like she has never missed or longed for anyone in the whole of her life. To the point where it was making her mentally and emotionally sick. By the time Ms. Jeffrey's mother Christine reached out to the undersigned via a mutual connection/Professor at Columbia Law School in New York, NY, the family was likewise love-sick missing Brittany and beyond depressed in regards to her absence.

In November 2020, the undersigned and my law partner flew down from New York and visited Ms. Jeffrey at Greene County Jail. Having been practicing criminal law for thirteen years at that point, I can count on one hand the number of clients I have ever seen as despondent as Ms. Jeffrey at that point. She was essentially giving up hope, had little idea as to what exactly was going on with her case, and was more concerned about her family's well-being rather than having counsel come along to better her understanding of what systemically was going on and to try to move the case toward an amenable disposition. Since coming onto the case, Ms. Jeffrey and I have developed a positive rapport, a strong sense of communication, and a trust, that to be frank, stems in part from a mutual and cultural understanding, which has given Ms. Jeffrey a clearer understanding of what the Court expects from her and most importantly, *why* it expects it of her. This has afforded her the psychological safety to accept that the Government is not out to get her, but rather, to work with her to ensure that she never repeats her conduct from August 26, 2020, which she has no intentions on doing because (1) as she will explain at sentencing, it wasn't right; and (2) she never wants to be away from her family again. That personal change in approach and mindset, in many respects et al, I believe underlied the Government's willingness to extend the plea that Ms. Jeffrey accepted responsibility for a couple of weeks ago.

In our communications about what the Court expects from her, Ms. Jeffrey has been extremely introspective, and has made clear that using marijuana is simply not worth everything that it has cost her: which, includes eleven months away from her family, eleven months away from her eleven-year-old daughter who needs her most, the time that she missed with her

grandmother before her grandmother passed away this past January[2], and the time and psychological toll she had to endure in Greene County Jail. Ms. Jeffrey now has perspective grounding her, which is something she didn't have when Judge Volpe initially ordered her detained. If released, she certainly does not want to run afoul of the Court's directives and find herself away from her daughter again and back in Greene County Jail or any jail for that matter. That deterrent effect makes her now more likely than ever to abide by the Court's conditions of release. And if never mentioned before, Ms. Jeffrey has asked the undersigned to apologize to Judge Volpe and Judge Marshall in this application for previously flouting the Court's rules, regardless of the Court's ultimate decision on the instant application.

Very specific to this case and very worth noting, is that it is no longer 2020 anymore. Something that societally – and most likely from an around-the-world perspective – I believe we are all grateful for. That was a very difficult time, probably one of the most difficult times in modern civilization. Between the historic pandemic, the unhealthy tones on all sides of the political spectrum, and the frustration centering around racial injustice, the year took a mental toll on pretty much all of us that love this country and want to see it live up to its ideals. Ms. Jeffrey was not excepted from that, at all. She nor I are excusing her actions back then, which include her decision to use marijuana to cope with all of the emotions from that time; however, based upon the rapport we have developed, I do believe that if Hamilton Clarke, LLP had represented her back then, more communication would have existed between Ms. Jeffrey and the Court in regards to her mental health and substance abuse from the inception of the case, and I believe that our directive to her and her family, as officers of the Court, to make sure that she was abiding by the Court's conditions would have been taken more seriously, as Ms. Jeffrey in no uncertain terms makes clear that it will be now.

This is important, because as Judge Volpe noted: the purposes of her detention were to put her in the best possible position to defend against her very serious charges. And even though she is no longer facing thirty years, the advisory Guidelines still recommend that she serve anywhere from an additional 13 to 21 months on top of the eleven months she has already served, regardless of the fact that she is eligible for a sentence of time served, or something less than what the Guidelines call for. She doesn't take that risk lightly. Moreover, as Your Honor noted to Ms. Jeffrey at the plea hearing on May 18, 2022, the Court has to assess all of the information specific to Ms. Jeffrey to make a proper determination under the 3553(a) factors. Ms. Jeffrey is more than aware that it would be much easier for us as her attorneys to work with her at this stage in a non-jail setting because our time to speak and gather the appropriate records/information will be much easier when we are not relegated to sporadic zoom calls at the availability of Pulaski County Jail officials, who, although helpful, can never permit us to speak on a daily, at will basis the way we would be able to if she were released.

Thus, for these reasons, Ms. Jeffrey requests being released to the third-party custody of her mother, Ms. Christine Jeffrey, located at 67 Angel Court, Mabelvale, Arkansas, 72103, and to reside at her home under conditions that the Court sees fit – including location monitoring, weekly drug testing, a $250,000 bond executed by three financially responsible persons, and a curfew up to 24 hours per day as the Court sees fit – to permit her the opportunity to work with

[2] Ms. Jeffrey is still eternally grateful to the Court for permitting her the temporary release to attend her grandmother's funeral.

the undersigned in preparation for sentencing in this matter, and also, to just let her be back with her family at this point.

At this time, no matter what Court's decision at sentencing may be, Ms. Jeffrey is beginning to see the light at the end of the proverbial tunnel. Whether she's incarcerated or not, she certainly doesn't want to make any poor decisions that could turn that light off and return her to the darkness that she experienced at Greene County Jail, where at times she literally didn't see the sun for months. On her oath, she will abide by the Court's directives if given a final opportunity for release.

Accordingly, Ms. Jeffrey requests for the Court to release her pending sentence, and humbly thanks the Court for its care and consideration.

Regards,

Phillip C. Hamilton

Phillip C. Hamilton, Esq.
Bar No. 4807095
Hamilton Clarke, LLP
Attorneys for Brittany D. Jeffrey
48 Wall Street, Suite 1100
New York, New York 10005
Phone: 212-729-0952
Email: PH@HamiltonClarkeLLP.com

cc: AUSA Stacy Williams, Esq. (via ECF)
AUSA John White, Esq. (via ECF)